**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **NORMA BURDEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 05-0582-WS-M** |
| | ) | |
| **INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL # 1410, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on motions for summary judgment filed by defendants International Longshoremen's Association, Local #1410 ("the Union"), Otis Washington, and Lloyd Gandy. (Docs. 74, 77, 81).[1] The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 75-77, 82, 84), and the motions are ripe for resolution. After carefully considering the foregoing, as well as other relevant material in the file, the Court concludes that the motions are due to be granted.

## BACKGROUND

The plaintiff, a longshore worker, sued the defendants and others for sexual harassment and retaliation in violation of Title VII. (Doc. 1). After obtaining counsel, she filed the amended complaint under which she is now traveling. (Doc. 40). The amended complaint asserts causes of action against the Union under Title VII for sexual harassment, retaliation, and constructive discharge. It also asserts claims against all

---

[1]The other defendants, J. Jones and "Smokey," have not moved for summary judgment, for the very good reason that they have never been served with process. The Court will address that situation by separate order.

defendants for invasion of privacy and intentional infliction of emotional distress. (*Id*. at 5-8).

**EVIDENCE OF SEXUAL HARASSMENT**

The plaintiff's version of events is drawn from a number of documents[2] and consists of the following:

- On March 19, 2005, Gandy picked up the plaintiff, firmly pressed his body against hers, and made an unidentified sexual statement.
- On April 23, 2005, Washington twice told the plaintiff he heard that she had the million dollar fuck. Later, Washington made a statement about twenty dollar women. He then said a man could give the plaintiff twenty dollars for sexual privileges.
- Defendant J. Jones pinched the plaintiff on her buttocks and came to her home on two occasions.
- Defendant Smokey told the plaintiff he wanted to ride her like some kind of animal and had all kinds of lewd ways he wanted to have sex.
- On many occasions, James Bell approached the plaintiff about her needing a good man and the things he would do for her.
- Willie Wilkenson inquired of the plaintiff what underwear she was wearing.
- On April 22, 2005, A. Gandy, with whom the plaintiff had worked three days previously, visited her home.

[2]Most of these documents are unsworn but, because the plaintiff professes first-hand knowledge of the incidents described therein and the defendants have not objected to their consideration — indeed, they submitted most of them — the Court draws from them as well as from her deposition. *E.g.*, *Macuba v. DeBoer*, 193 F.3d 1316, 1324 (11th Cir. 1999) (otherwise admissible evidence may be submitted in inadmissible form at the summary judgment stage) (internal quotes omitted); *Munoz v. International Alliance*, 563 F.2d 205, 214 (5th Cir. 1977) (inadmissible evidence to which no objection is raised may be considered on motion for summary judgment).

- G.M. Davis told the plaintiff he wanted to buy her breakfast when he wakes up with her.
- Harold Thomas put his hand on the plaintiff's shoulder and called her baby and honey.

**DETERMINATIONS OF UNCONTROVERTED FACT**

Neither the plaintiff nor any of the defendants is or ever was an officer or employee of the Union. The plaintiff was a member of the Union, and the defendants were either Union members or, possibly, unaffiliated with the Union. (Doc. 75, Taite Declaration, ¶¶ 5-6).

The Mobile Steamship Association ("the Association") is an association of waterfront employers operating at the Alabama State Docks. CSA Equipment Company ("CSA") is one of the Association's members. The Association operates a hiring center, at which union members present themselves for work and are selected for work (or not) on a daily basis by foremen, who are Union members but who, as foremen selected by the employer, act as representatives of the employer. The plaintiff was sometimes selected by CSA. (Doc. 75, Taite Declaration, ¶¶ 4-6).

None of the alleged harassment occurred on Union property or at a Union gathering. Instead, each incident of alleged harassment (other than three visits to the plaintiff's home) occurred either at the hiring center while the plaintiff awaited selection for employment or at the State Docks while the plaintiff was working for CSA. (Doc. 1 at 3; Doc. 75, Exhibit 2; Doc. 77, Exhibit 2 at 26).

The plaintiff complained to the Union about sexual harassment on April 23, 2005. The Union advised her to take her complaint to CSA, which she did the same day. The Union also provided the plaintiff a grievance form, which she dated April 28, 2005 and amended on May 1, 2005. CSA received the plaintiff's written complaint and began an investigation on or before May 1, 2005. The Union assisted the investigation in every

way that CSA requested. (Doc. 75, Taite Declaration, ¶¶ 8-9; *id*., Exhibit 2; Doc. 77, Exhibit 2 at 26).

**DISCUSSION**

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367, as well as 42 U.S.C. § 2000e-5(f)(3). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

**A. Sexual Harassment.**

The amended complaint alleges that the plaintiff was subjected to sexual harassment by the individual defendants and others. (Doc. 40 at 4). The Union argues that the plaintiff's suit depends on the "fundamental misunderstanding" that the Union employed the plaintiff. (Doc. 76 at 6). As noted, it is uncontroverted that the Union did not employ the plaintiff. However, while the plaintiff does assert that the Union employed her, she does not peg her Title VII claim to that assertion. Instead, her amended complaint invokes 42 U.S.C. § 2000e-2(c), (Doc. 40, ¶ 1), which addresses the

liability of "labor organizations." She does not invoke Section 2000e-2(a), which addresses the liability of "employers."

Section 2000e-2(c) provides for union liability under three subsections. First, a union may be liable for "discriminat[ing] against ... any individual because of [her] ... sex." 42 U.S.C. § 2000e-2(c)(1). Second, a union may be liable for hindering an individual's employment opportunities, or adversely affecting her status as an employee or applicant, because of her sex. *Id*. § 2000e-2(c)(2). Third, a union may be liable for "caus[ing] or attempt[ing] to cause an employer to discriminate against an individual in violation of this section." *Id*. § 2000e-2(c)(3). The plaintiff does not identify which of these subsections she is traveling under, but it appears that only the first and last of them is potentially in play. *See Thorn v. Amalgated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) (only these subsections were relevant to the plaintiff's sexual harassment claim against her union).

As noted, it is uncontroverted that all alleged harassment, other than three visits to the plaintiff's home, occurred at the State Docks and the hiring center — both places controlled by the employer — while the plaintiff was an employee and an applicant for employment, respectively. Section 2000e-2(c) contains no "language imposing upon unions an affirmative duty to investigate and take steps to remedy employer discrimination." *Thorn*, 305 F.3d at 832. Rather, that section imposes liability only if "the union itself instigated or actively supported the discriminatory acts." *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1077 (8th Cir. 2005) (internal quotes omitted); *accord EEOC v Pipefitters Local 597*, 334 F.3d 656, 660-61 (7th Cir. 2003); *Angelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3rd Cir. 1999). The mere fact that the workplace harassment was perpetrated by union members is insufficient to support liability, because "[u]nions have no duty to take remedial action for discriminatory acts by their individual members." *Eliserio*, 398 F.3d at 1077. Thus, "passive acquiescence" in workplace discrimination by union members is "non-

actionable." *Thorn*, 305 F.3d at 833. Absent any Eleventh Circuit authority to the contrary, the Court accepts these propositions as reflective of governing law.[3]

The question becomes whether there is evidence sufficient to support a genuine issue of material fact as to whether the Union instigated or actively supported the alleged workplace harassment. The plaintiff's only complaint concerning the Union's conduct is that, when she approached its president and told him what was happening, he said it was only normal because she was an attractive woman. (Doc. 75, Exhibit 2 at 6). This may constitute "passive acquiescence" in workplace harassment, but it does not constitute "active support" of the harassment.

A union may actively support workplace harassment if it refuses to file a grievance or otherwise assert a claim with the employer on the plaintiff's behalf. *Thorn*, 305 F.3d at 833. Here, however, it is uncontroverted that the Union advised the plaintiff to bring her complaint to CSA's attention, that it promptly provided her a grievance form, and that it cooperated fully in the employer's ensuing investigation. Under these circumstances, as a matter of law the Union did not actively support workplace harassment of the

---

[3]The *Pipefitters* case identified the Eleventh Circuit as imposing on a union "an affirmative duty to prevent" employer discrimination. 334 F.3d at 660 (citing *Howard v. International Molders & Allied Workers Union*, 779 F.2d 1546 (11th Cir. 1986). *Howard*, however, states only that Section 2000e-2(c)(3) imposes on unions "an affirmative duty to take corrective steps to prevent the *perpetuation of past discrimination*," 779 F.2d at 1547, 1553 (emphasis added), and this principle appears to have been applied by the appellate court only when the union failed to press for an end to institutionalized discriminatory practices (such as seniority systems and testing schemes) during negotiations over a collective bargaining agreement. *See Howard*, 779 F.2d at 1548; *Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112, 1120-21 (5th Cir. 1981), *vacated on other grounds*, 456 U.S. 955 (1982); *Sinyard v. Foot & Davies*, 577 F.2d 943, 945 (5th Cir. 1978); *Myers v. Gilman Paper Corp.*, 544 F.2d 837, 850 (5th Cir. 1977); *Rodriguez v. East Texas Motor Freight*, 505 F.2d 40, 60 (5th Cir. 1974), *vacated on other grounds*, 431 U.S. 395 (1977). Even could *Howard* and other cases be read to impose a duty to negotiate for a strong EEO clause in the collective bargaining agreement, and even had the plaintiff raised any argument along these lines, the union's agreement with CSA contains a perfectly sound EEO provision. (Doc. 75, Exhibit 1 at 32-34).

plaintiff.

The three visits to the plaintiff's home did not occur at the workplace, but they are governed by the same principles. Because "[u]nions have no duty to take remedial action for discriminatory acts by their individual members," a plaintiff "must show that [the union], as an organization, 'instigated or actively supported'" the harassing behavior. *Eliserio*, 398 F.3d at 1077. The plaintiff has not attempted to show that the Union was in any manner involved with the home visits by J. Jones and A. Gandy, and that failure is fatal to her claim.

Because, under the uncontroverted facts, the Union did not violate its duty under Section 2000e-2(c), the plaintiff's claim of sexual harassment must fail.

**B. Retaliation.**

"It shall be an unlawful employment practice for ... a labor organization to discriminate against any member thereof ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). The amended complaint alleges that, as a result of her complaint of sexual harassment, she was denied the opportunity to work and was harassed by the individual defendants and others at her home and over the telephone. (Doc. 40 at 8).

When the defendant is the employer, "[t]o establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate: (1) that he engaged in statutorily protected activity; (2) that he suffered [an] adverse employment action; and (3) that the adverse employment action was causally related to the protected activity." *Harper v. Blockbuster Entertainment Corp*., 139 F.3d 1385, 1388 (11th Cir. 1998). Appellate courts commonly require an adverse employment action even when the defendant is a union. *See Toll v. American Airlines, Inc*., 166 Fed. Appx. 633, 636-37 (3rd Cir. 2005); *Gibbs v. General Motors Corp*., 104 Fed. Appx. 580, 582-83 (7th Cir. 2004); *Barrow v. New Orleans Steamship Association*, 10 F.3d 292, 298-99 (5th Cir. 1994); *Johnson v. Palma*,

931 F.2d 203, 207 (2nd Cir. 1991). In the Eighth Circuit, however, "[b]ecause unions often do not have the authority to subject a represented employee to an adverse *employment* action, we have held that any meaningful adverse action is sufficient when the retaliation defendant is a union." *Eliserio*, 398 F.3d at 1079 (emphasis in original). Under either test, the adverse action must of course be visited or caused by the union. *Thorn*, 305 F.3d at 831.

A failure to be hired for day labor is plainly a meaningful adverse employment action. However, it is uncontroverted that the daily selections of workers at the hiring center were made by the foremen. The foremen are Union members, but they are selected by the employer and act on behalf of the employer, not the Union, in selecting their gangs. While it might be possible to show that particular selections by the foremen were influenced by the Union,[4] the plaintiff has offered no evidence to make such a showing.

The plaintiff has identified no evidence of harassing telephone calls. She has alleged one visit to her home by A. Gandy, but it occurred on April 22, the day *before* her complaint. The only other home visits she has alleged are two by J. Jones, the content of which are unidentified and which occurred on dates unspecified but no later than May 1, 2005.[5] Assuming for argument that these visits were made by Jones in retaliation for her

---

[4]In *Eliserio*, for example, there was evidence that the employer, in deciding to demote the plaintiff, relied on the union's request to "get [him] out of the area." 398 F.3d at 1079.

[5]The plaintiff has submitted letters from two acquaintances. One states that, on a single, unspecified occasion, she observed unidentified individuals repeatedly drive by the plaintiff's home, as well as the author's. The other states that, on several occasions in the summer and fall of 2005, the author observed a white, two-door pickup appear to follow her and the plaintiff while they walked. Without any evidence of the occupants of the vehicles, the letters cannot help the plaintiff. This is especially so with respect to the pickup, which the author observed following her when the plaintiff was nowhere around. (Doc. 25 at 11-12).

complaint of harassment,[6] the plaintiff has identified no evidence that Jones was acting as a representative of the Union rather than on his own. Moreover, even were his visits attributable to the Union, they do not rise to the level of a meaningful adverse action, much less an adverse employment action. *See, e.g., Higdon v. Jackson*, 393 F.3d 1211, 1219-20 (11th Cir. 2004) (for purposes of an Americans with Disabilities Act retaliation claim, rudeness is not an adverse action because "the civil rights laws were not intended to be a 'civility code'") (internal quotes omitted); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (an adverse employment action requires a "*serious and material* change in the terms, conditions or privileges of employment") (emphasis in original).

Because the plaintiff cannot establish a prima facie case, her claim of retaliation must fail.

**C. Constructive Discharge.**

While sometimes described as a "claim,"[7] a constructive discharge is actually only an adverse employment action and thus only an element of a claim. *E.g., Rowell v. BellSouth Corp.*, 433 F.3d 794, 806-07 (11th Cir. 2005); *Akins v. Fulton County*, 420 F.3d 1293, 1300-01 (11th Cir. 2005); *Griffin v. GTE Florida, Inc.*, 182 F.3d 1279, 1283-84 (11th Cir. 1999). Consequently, it supports a claim only if the other elements of the claim are satisfied. Because the plaintiff cannot establish the other elements of her Title VII claims against the Union, it is irrelevant whether she was constructively discharged.

---

[6]A doubtful prospect, since the first mention of Jones in her complaint was in the May 1, 2005 addendum that identified the home visits as historical events.

[7]*E.g., Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002); *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001).

**D. Intentional Infliction of Emotional Distress.**

The amended complaint alleges that the conduct of defendants Washington, Gandy, Jones and Smokey rises to the level of intentional infliction of emotional distress and that the Union is also liable for their tortious conduct under the doctrine of respondeat superior. (Doc. 40 at 6).

"In order to prevail on a tort-of-outrage claim, a plaintiff is required to prove that the defendant's conduct: (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Soti v. Lowe's Home Centers, Inc*., 906 So. 2d 916, 919 (Ala. 2005) (internal quotes omitted). The conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id*. (internal quotes omitted).

"The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: ... (3) egregious sexual harassment ...." *Potts v. Hayes*, 771 So.2d 462, 465 (Ala. 2000). Thus, allegations by an employee that her supervisor "fondled his genital area in her presence, that he poked her and other female employees under their armpits near their breasts, that he put his hands on her waist and rubbed against her as he passed through a doorway, that he touched her leg, that he frequently questioned her about her 'private life' and asked if she was seeing anyone, that he frequently asked her to meet him somewhere after work for 'other than business purposes,' that he uttered sexual innuendos to her, and that he had tried to look up her skirt," as a matter of law do not support on outrage claim. *Turner v. Hayes*, 719 So. 2d 1184, 1187 (Ala. Civ. App. 1997), *rev'd in part on other grounds*, 719 So. 2d 1190 (Ala. 1998).

Since the individual defendants are not alleged to have acted in concert or been agents of each other, the conduct of each must be viewed separately. As noted, the only allegation against Gandy is that, on a single occasion, he picked up the plaintiff, firmly

pressed his body against hers, and made a sexual statement. Given that the egregious and continued conduct of the defendant in *Turner* was not "extreme and outrageous" for purposes of such a claim, Gandy's limited and milder conduct, although inappropriate, as a matter of law cannot support the plaintiff's claim. This is especially so in light of her failure to allege that sexual parts of her body or Gandy's were involved in the incident, as well as her failure to identify the content of the sexual statement.

The plaintiff complains that Washington twice told her he heard that she had the million dollar fuck; that he made a statement about twenty dollar women; and that he said a man could give her twenty dollars for sexual privileges. The Court has located no Alabama case endorsing a claim for intentional infliction of emotional distress based solely on crude sexual comments, and doing so would extend the tort past its breaking point. *See, e.g., Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) ("It should also be noted that this tort does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") (internal quotes omitted).

As noted, the Union is sued exclusively on a theory of respondeat superior. "[O]n a claim against an agent, and against the principal solely on the theory of respondeat superior, a verdict in favor of the agent works an automatic acquittal of the principal ...." *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 827 (Ala. 1999). Thus, "if all tort claims against an agent are dismissed with prejudice, then a subsequent tort claim based on the same facts will not lie against the agent's principal" unless the parties agreed to the contrary. *Hundley v. J.F. Spann Timber Co.*, 2007 WL 80828 at *5 (Ala. 2007).

Defendants Gandy and Washington are entitled to dismissal with prejudice of the plaintiff's claim against them for intentional infliction of emotional distress, because the conduct alleged is, as a matter of law, not extreme and outrageous. The conduct of defendant Jones (which is comparable to that of Gandy) and of defendant Smokey (which is comparable to that of Washington) is likewise insufficient as a matter of law to support individual liability. Because none of the individual defendants can be liable for

intentional infliction of emotional distress, neither can the Union be liable under the doctrine of respondeat superior.[8]

**E. Invasion of Privacy.**

The amended complaint alleges that, by their conduct, defendants Washington, Gandy, Jones and Smokey intruded upon the plaintiff's solitude and seclusion, and it alleges further that the Union is liable for the individual defendants' invasion of her privacy under the doctrine of respondeat superior. (Doc. 40 at 7).

Invasion of privacy "consists of four distinct wrongs: 1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use." *Gary v. Crouch*, 867 So. 2d 310, 318 (Ala. 2003) (internal quotes omitted). The plaintiff confines her cause of action to the first prong.

"The invasion may be physical intrusion into a place in which the plaintiff has secluded [her]self," or "use of the defendant's senses ... to oversee or overhear the plaintiff's private affairs," or "some other form of investigation or examination into [her] private concerns." *Phillips v. Smalley Maintenance Services, Inc.*, 435 So. 2d 705, 710-11 (Ala. 1983)(internal quotes omitted). Conduct that does not fall within any of these categories cannot support such a claim. *See Gary*, 867 So. 2d at 318 ("Lt. Gary has made no showing that Chief Crouch has intruded on her seclusion, because she has made no showing that he sought or obtained any private information about her, or that he intruded upon her 'physical solitude or seclusion' by seeking any information that he did not

---

[8]An element of a claim for intentional infliction of emotional distress is that the plaintiff experience "emotional distress so severe that no reasonable person could be expected to endure it." *Soti*, 906 So. 2d at 919. The record before the Court discloses no evidence that could possibly meet this daunting standard. However, because the defendants do not seek summary judgment on this ground, the Court does not rely on it.

properly have access to through his role as her supervisor in the police department.").

Washington is not alleged to have invaded the plaintiff's personal space, spied upon her, or inquired into her private life. Instead, he is accused only of speculating as to the value and cost of her sexual services. Although boorish, as a matter of law Washington's alleged comments did not invade the plaintiff's privacy.

Gandy's situation requires closer scrutiny, because it involves touching. The Court has located several Alabama cases allowing a claim of invasion of privacy in which the defendant's conduct included touching, but also one case disallowing such a claim despite the presence of touching. A review of these cases reveals the side of the divide on which Gandy's conduct lies.

In *Busby v. Truswal Systems Corp*., 551 So. 2d 322 (Ala. 1989), a jury issue was presented when the plaintiffs' case included evidence that the defendant "put his arm around the plaintiffs, grabbed their arms, and stroked their necks" on multiple occasions. *Id*. at 324. However, this evidence of touching was supplemented with evidence of sixteen different forms of verbal conduct, including various requests for sexual favors, comments about a plaintiff's sexual parts, open stares at the plaintiffs' anatomy, and an attempt to follow a plaintiff into a women's restroom. *Id*.

In *Cunningham v. Dabbs*, 703 So. 2d 979 (Ala. Civ. App. 1997), a jury issue was presented when the plaintiff's case included evidence that the defendant frequently rubbed her shoulders and, on one occasion, stuck his tongue in her ear. *Id*. at 980, 982. However, there was also evidence that the defendant made repeated veiled requests for sexual favors. *Id*. at 980, 982.

In *Ex parte Atmore Community Hospital*, 719 So. 2d 1190 (Ala. 1998), there was evidence that the defendant "touched [the plaintiff's] waist, rubbed against her when passing her in the hall, poked her in the armpits near the breast area, and touched her leg," all such conduct being intentional and "with sexual overtones." *Id*. at 1194. However, there was also evidence that the defendant "fondled his genital area in [the plaintiff's]

presence, ... that he frequently questioned her about her 'private life' and asked if she was seeing anyone, that he frequently asked her to meet him somewhere after work for 'other than business purposes,' that he uttered sexual innuendos to her, and that he had tried to look up her skirt." *Turner v. Hayes*, 719 So. 2d at 1184. Moreover, in finding the existence of a jury issue as to invasion of privacy, the Supreme Court did not rely on any evidence of touching. 719 So. 2d at 1194.

Finally, in *McIsaac v. WZEW-FM Corp*., 495 So. 2d 649 (Ala. 1986), the plaintiff presented evidence that the defendant tried to kiss her and that he several times touched her on the arm or put his arm around her. *Id*. at 650. There was also evidence that the defendant gave her suggestive looks, repeatedly asked her to dinner, asked her to come to him, offered to arrange for her to visit him in Texas, and asked her to have an affair with him. *Id*. The Court held that all this evidence combined did not create a jury issue as to invasion of privacy. *Id*. at 651.

These cases make plain that the mere fact of a touching does not, of itself, create a jury issue as to whether an invasion of privacy has occurred. Instead, a court should look to the gravity of the touching, the frequency of the touching, and the other conduct relied upon by the plaintiff. Each of these factors weighs against the plaintiff.

As noted, the plaintiff's sole allegation against Gandy is that, on a single occasion, he picked her up, firmly pressed his body against hers, and made an unidentified sexual statement. Because the plaintiff has presented no evidence of what Gandy said,[9] his comment cannot be assumed to have been intrusive or even offensive.[10] Thus, the

---

[9]The assertion in the unverified amended complaint filed by her lawyers that Gandy "stat[ed] that he would like to perform sexual acts upon Plaintiff," (Doc. 40 at 4), is not evidence for purposes of a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. at 324.

[10]*Cf. Snellgrove v. Teledyne Abbeville*, 117 F. Supp. 2d 1218, 1236 n.16 (M.D. Ala. 1999) (in a Title VII action, when the plaintiff testified that the alleged harasser "made 'a lot' of inappropriate comments, but she did not testify as to the nature of the

plaintiff's claim depends entirely on his touching of her.

Although the Court has located no Alabama case approving a claim for invasion of privacy based exclusively on a single incident of touching, it assumes that such a situation is possible. For example, a sexual assault would surely constitute an invasion of privacy. *Cf. Kelley v. Worley*, 29 F. Supp. 2d 1304, 1308, 1311 (M.D. Ala. 1998) (actionable conduct consisted almost exclusively of multiple episodes of the defendant putting his hand under the plaintiff's dress and rubbing her legs, breasts and buttocks). There is no evidence, however, that Gandy's touching of the plaintiff was of a comparable nature. There is, for example, no evidence that Gandy, in lifting and pressing against the plaintiff, touched on or near any sexual part of her body, or that any sexual part of his body touched her, and there is no evidence that he touched anywhere other than her outer layer of clothing. Nor is there evidence that the touching lasted more than a few seconds. The incident, on this vague record, is of the same bolt as the defendant's touching in *McIsaac*. Because the several episodes in *McIsaac* of the defendant putting his arm on or around the plaintiff were inadequate as a matter of law to support a claim for invasion of privacy, so also the plaintiff's allegations against Gandy are legally insufficient to survive summary judgment.

The plaintiff again stakes her claim against the Union exclusively on the doctrine of respondeat superior. As noted in Part D, absent liability by the individual defendants there can be no respondeat superior liability of the Union. The preceding discussion demonstrates that, under the law and evidence, Gandy and Washington have no liability to the plaintiff for invasion of privacy. As discussed below, the same is true of the remaining two individual defendants.

The plaintiff alleges that defendant Jones pinched her on her buttocks one time and

---

comments," the Court "conclude[d] that this testimony regarding 'a lot' of inappropriate comments is too vague to consider with respect to [the plaintiff's] hostile environment claim").

came to her home on two occasions. As with Gandy's sexual statement, the absence of any evidence of what occurred on Jones' two visits precludes the Court from assigning any weight to the incidents. The physical contact, although unquestionably vulgar, occurred only once, and there is no evidence that it lasted more than an instant or involved touching anything other than the plaintiff's outer layer of clothing. After considering the gravity of the touching (relatively low), its frequency (once), and additional conduct (effectively, none), the Court concludes that the plaintiff's allegations against Jones cannot sustain a claim for invasion of privacy.

The plaintiff alleges that Smokey told her he wanted to ride her like some kind of animal. He also had all kinds of lewd ways he wanted to have sex. The latter allegation is unhelpful to the plaintiff, both because she has not identified what Smokey said so that the Court can evaluate it, and because she has not alleged that Smokey was describing fantasized sex *with her*. The single remaining comment — at most an inept request for sexual favors — is an insufficient basis for liability in light of *McIsaac*. "Even the dire affront of inviting an unwilling woman to illicit intercourse has been held by most courts to be no such outrage as to lead to liability [for invasion of privacy]." 495 So. 2d at 652 (internal quotes omitted).

## CONCLUSION

If the plaintiff's allegations are true, none of the defendants has anything of which to be proud. The Court's charge, however, is limited to determining whether there is a genuine issue of material fact as to every element of one or more of the claims the plaintiff has asserted in her amended complaint. For the reasons set forth above, the Court concludes that there is not. Accordingly, the motions for summary judgment filed by the Union, Gandy and Washington are **granted**. The plaintiff's claims against these defendants are **dismissed with prejudice**.

DONE and ORDERED this 30th day of April, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE